UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DONALD J. SEARLES,<br><br>                    Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of the Social Security<br>Administration,<br><br>                    Defendant. | CASE NO. 2:15-cv-0617 JRC<br><br>ORDER ON PLAINTIFF'S<br>COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 3; Consent to Proceed Before a United States Magistrate Judge, Dkt. 4). This matter has been fully briefed (*see* Dkt. 8, 9, 10).

After considering and reviewing the record, the Court concludes that the ALJ failed at step five to meet her burden to show that plaintiff could have performed any substantial gainful work in the national economy. Although the ALJ found that the

vocational expert relied on her professional expertise when she altered her testimony to provide the exact opposite testimony to that initially provided, such a finding is not based on substantial evidence in the record as a whole. Instead, the VE's subsequent testimony which conflicts with the Dictionary of Occupational Titles reveals that she did not base her contradictory opinion on professional expertise or factual evidence.

## BACKGROUND

Plaintiff, DONALD. J. SEARLES, was born in 1962 and was 44 years old on the alleged date of disability onset of January 1, 2007 (*see* AR. 241-42, 243-45, 251). Plaintiff has a high school diploma (AR. 51). Plaintiff has work experience as a fence builder (AR. 78). He took a leave of absence from the fence building job because he was unable to concentrate due to lack of sleep and was getting injured (AR. 78-79). Plaintiff last worked doing day labor putting things in packages, but could not concentrate and was let go (AR. 82-83).

According to the ALJ, plaintiff has at least the severe impairments of "degenerative changes of the left elbow status/post multiple remote fractures, tendinopathy of the right shoulder, attention deficit/hyperactivity disorder (ADHD), Asperger's syndrome, depressive disorder not otherwise specified (NOS), personality disorder NOS, and polysubstance abuse (in reported remission) (20 CFR 404.1520(c) and 416.920(c)))" (AR. 29).

At the time of the first hearing, plaintiff was staying with friends or in shelters (AR. 83-85).

## PROCEDURAL HISTORY

Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* AR. 119-22, 124-34). Plaintiff's requested hearing was held before Administrative Law Judge M. J. Adams ("the ALJ") on October 16, 2012 (*see* AR. 71-114), with a supplement hearing held on April 17, 2013 (*see* AR. 48-70). On May 14, 2013, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 24-47).

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Whether or not the ALJ provided persuasive evidence to support adopting vocational expert ("VE") testimony which conflicts with the Dictionary of Occupational Titles ("DOT"); and (2) Whether or not the ALJ's errors support remand for an immediate award (*see* Dkt. 8, p. 1).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

**(1) Whether or not the ALJ provided persuasive evidence to support adopting vocational expert ("VE") testimony which conflicts with the Dictionary of Occupational Titles ("DOT").**

Plaintiff does not contest the ALJ's evaluation of the medical evidence or plaintiff's credibility (*see* Dkt. 8, p. 1). Nor does plaintiff contest the ALJ's formulation of plaintiff's residual functional capacity ("RFC") or the ALJ's finding at step four that plaintiff is unable to perform past relevant work (*see id.*). The ALJ found that plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567 (b) and 416.967 (b) except that he cannot climb stairs, ladders, rope, or scaffolding. He has no limitations in his abilities to balance, stoop, kneel, crouch, or crawl. He has no manipulative limitation within his right (dominant) upper extremity. He can never reach overhead with his left (non-dominant) upper extremity. He can occasionally reach laterally with the left upper extremity. He can occasionally handle, finger, feel, push, or pull with the left upper extremity. He should not work at heights or around hazardous machinery. He can understand, remember, and carry out simple instructions, consistent with unskilled work (SVP 1 to 2). He can make judgments on simple work-related decisions and can respond appropriately to supervision. He has an average ability to perform sustained work activities (i.e., can maintain attention, concentration, persistence, and pace) in an ordinary work setting on a regular and continuing basis (i.e., Eight hours per day, five days per week, or an equivalent work schedule) within customary tolerances of employers' rules regarding sick leave and absence. He can work with familiar coworkers. He can tolerate occasional changes in his work environment, as well as occasional exposure and interaction with the general public.

(AR. 33-34). The Court notes that defendant has misconstrued the record, indicating that it is plaintiff who "asserts" the presence of "non-dominant hand restrictions," when it is

instead the ALJ who has found that plaintiff had such limitations (*see id.; see also* Dkt. 9, p. 4).

Plaintiff contends that the ALJ erred at step five in the written decision by concluding that there was significant other work in the national economy that plaintiff could perform, given the referenced RFC (*see* Dkt. 8, pp. 1-12; AR. 41-42). As noted by the Ninth Circuit:

> At step four, claimants have the burden of showing that they can no longer perform their past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990). Once they have shown this, the burden at step five shifts to the Secretary to show that, taking into account a claimant's age, education, and vocational background, she can perform any substantial gainful work in the national economy. 20 C.F.R. §§ 404.1520(f) and 416.920(f); *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000).

*Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001) (*citing* 20 C.F.R. §§ 404.1520(e), (f), 416.920(d), (e), (f); *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990)) (internal footnote omitted).

As an initial matter, the Court notes that when the ALJ first asked the VE whether or not an individual with plaintiff's RFC would be able to perform any other work existing in the national economy the VE testified that "I would not be able to identify any jobs" (AR. 56-57). The VE testified that the basis for this opinion was that "in sedentary and light work, what you have to offer your employer is the use of your upper extremities, and it's difficult to handle, reach, feel, push and pull with one hand for two-thirds of day" (AR. 57). However, after the ALJ responded that "Social Security, in their policy statements, recognizes the capability of a single upper extremity person being able

ORDER ON PLAINTIFF'S COMPLAINT - 5

to perform at least the light and sometimes higher exertional demand," the VE changed her testimony to render the opposite opinion (*see id.*). When subsequently asked by plaintiff's attorney if she had ever read this provision that was referenced by the ALJ, the VE testified "I probably have" (AR. 68). When plaintiff's attorney asked if the VE remembered if she had read it or not, the VE testified "I don't" (*see id.*). When plaintiff's attorney asked the VE if she was aware of the contents of the policy, the VE indicated that an administrative law judge made her aware of its contents, further testifying that "that's as aware as I am" (*id.* (although she appears to have mis-named the ALJ)). The Court agrees with plaintiff's contention that these facts render the VE's subsequent opposite testimony less substantiated and less persuasive. The Court notes that defendant misconstrued the record a second time by indicating that plaintiff alleges "that the ALJ impermissibly 'led' the VE to testify in such a way that precluded an answer VE might otherwise have given" (Dkt. 8, p. 4). However, plaintiff actually argued that the ALJ impermissibly led the VE to testify in such a way that contradicted an answer that the VE already had given, as the VE initially testified that there were no jobs that an individual with plaintiff's RFC could have performed and only changed her testimony after prompting from the ALJ (AR. 56-57).

There additionally is the issue of the acknowledged conflict between the DOT and the VE's testimony.

When there is a conflict between the testimony of the vocational expert ("VE") and the *Dictionary of Occupational Titles* ("DOT") regarding work that an individual with a particular RFC can perform, "the ALJ must then determine

whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the *Dictionary of Occupational Titles.*" *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (footnotes omitted). However, "an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson v. Shalala,* 60 F.3d 1428, 1435 (9th Cir. 1995).

Here, the ALJ found that the VE's testimony was inconsistent with the information in the DOT (*see* AR. 42). The Court agrees with this finding by the ALJ and notes plaintiff's argument that "it is clear that the DOT contemplates bimanual dexterity for the jobs cited given the 'things' code includes all work functions involving things pursuant to the DOT coding," including that "an individual worker would be required to interact with things to (0) set up; (1) perform precision work; (2) operate and control items; (3) drive and operate items; (4) manipulate items; (5) tend to things; (6) feed and off bear items; and (7) handle items" (Opening Brief, Dkt. 8, p. 10). The Court notes that the VE testified that all of the identified jobs require frequent reaching and handling according to the DOT (AR. 59) and the ALJ found that plaintiff could only occasionally reach laterally and occasionally handle with the non-dominant extremity (AR. 33-34). The Court also notes that defendant for a third time has misconstrued the record, characterizing plaintiff's argument as "the VE's testimony . . . . was unreliable because it allegedly conflicted with the Dictionary of Occupational Titles (DOT)" (*see* Response, Dkt. 9, p. 5). However, it is not plaintiff who "alleges" that the VE's testimony conflicts with the DOT, it is the ALJ who found that the VE's "testimony has deviated

1  from the information contained in the Dictionary of Occupational Titles (DOT) . . . ."

2  (AR. 42).

3      After noting the deviation between the DOT and the VE testimony, the ALJ found
4  that the VE had "adequately described her reasons for these deviations" (AR. 42). The
5  ALJ found that although the VE at the April 2013 hearing "acknowledged that the DOT
6  did not denote unilateral or dominant/non-dominant manipulative requirements, [the VE]
7  expressed that her opinions regarding these limitations and requirements were based on
8  her professional experience with these jobs" (*id.*). However, this finding is not based on
9  substantial evidence in the record as a whole regarding all of the identified jobs as
10 discussed further below.
11
12     Following questioning from plaintiff's attorney, the VE explicitly testified that she
13 never had observed the job as a price marker as a vocational expert, but only "just out and
14 about in the general public" (AR. 60). Therefore, the ALJ's finding that the VE testified
15 that she was expressing "her opinions regarding the[] limitations and requirements []
16 based on her professional experience" is not supported by substantial evidence in the
17 record (*see* AR. 42, 60). The Court finds persuasive plaintiff's argument that the VE's
18 "observations of this job in the general public which are not formed in her capacity as an
19 expert did not lend support to her testimony [that] plaintiff can perform the job of price
20 maker with one hand" (Dkt. 8, pp. 6-7). The Court concludes that the ALJ's findings
21 regarding this position as a price marker are not supported by substantial evidence in the
22 record as a whole. In addition, the Court concludes that "the record [does not] contain[]
23
24

persuasive evidence to support the deviation" from the DOT by the ALJ regarding this first identified job. *Johnson, supra,* 60 F.3d at 1435.

The VE also opined that there were two other jobs that an individual with plaintiff's RFC potentially could perform, including cafeteria attendant and housekeeper/cleaner (*see id.*). First, regarding the cafeteria attendant job, the Court notes that the VE testified that she could not remember the last time that she observed this job in her professional capacity (AR. 61). This fact lends support to plaintiff's argument that the VE was not relying on her professional expertise when providing her second, contradictory opinion that one with plaintiff's RFC could perform this job. According to the DOT, a cafeteria attendant:

> Carries trays from food counters to tables for cafeteria patrons. Carries dirty dishes to the kitchen. Wipes tables and seats with dampened cloth. Sets tables with clean linens, sugar bowls, and condiments. May wrap clean silver in napkins. May circulate among diners and serve coffee and be designated Coffee Server, Cafeteria or Restaurant (hotel and rest.).

http://www.occupationalinfo.org/31/311677010.html (last visited 9/15/2015). Plaintiff notes that the VE indicated that dishes, silverware, and glasses can be lifted with one hand, with an assist from the left hand when necessary (Dkt. 8, p. 8 (*citing* AR. 59-60)). When asked by plaintiff's attorney how she was drawing the conclusion that the job of cafeteria attendant can be done with only the occasional use of the non-dominant upper extremity, the VE testified that this opinion was based on the "weights of the items to be handled . . . . Don't require two hands to lift" (AR. 66). The Court finds persuasive plaintiff's indication that this opinion "Ignor[es] that the person likely would be handling more than one individual plate, glass or piece of silverware . . . ." (Dkt. 8, p. 8). As the

ORDER ON PLAINTIFF'S COMPLAINT - 9

DOT indicates that the job of cafeteria attendant involves carrying "dirty dishes to the kitchen," and not carrying a dirty dish, one at a time, the Court agrees with the finding by the ALJ that the VE's testimony regarding the duties of a cafeteria attendant is inconsistent with the DOT. The VE's opinion that carrying dirty dishes to the kitchen can be accomplished with only the occasional use of the non-dominant extremity because each individual dish to be carried has a small weight is inconsistent with the practical implication from the DOT that a cafeteria attendant would be carrying many dishes at a time. The same rationale applies regarding the carrying of trays: Although it may be feasible to carry one tray at a time with only the occasional assist from the non-dominant arm, it is not easy to ascertain how a cafeteria worker would carry multiple trays at a time with only the occasional assist from the non-dominant arm. Again, the DOT indicates that a cafeteria carries "trays," not carries a tray one at a time. http://www.occupationalinfo.org/31/311677010.html (last visited 9/15/2015). In addition, the DOT indicates that a cafeteria worker carries trays from food counters to tables for patrons, suggesting that the trays may have food on them when carried to the tables, making them even more difficult to maneuver with one hand. *See id.*

   The Court also notes that when plaintiff's attorney asked the VE if the DOT is referring to bilateral use when it references reaching, handling and fingering, the VE testified: "I really haven't explored that, so I can't answer that with any certainty" (AR. 61). Furthermore, when the VE was asked how much slower a person would be if they had the restrictions noted in the RFC regarding the non-dominant arm, the VE testified that the difference would be less than five percent (AR. 67-68). When asked what the

opinion of only a five percent slowing was based on, the VE indicated that it was based on "just my opinion, I don't have anything factual" (AR. 68).

For the reasons discussed, and based on the record as a whole, the Court concludes that the VE's testimony is not adequately based on professional expertise but is in large part based on unsupported conjecture with the lack of "anything factual" to back it up (*see id.*). The Court also concludes that the VE's testimony is inconsistent with the DOT, as found by the ALJ, and that the record does not "contain persuasive evidence to support the deviation" by the ALJ from the DOT regarding this second identified job. *See Johnson, supra,* 60 F.3d at 1435.

Finally, regarding the job of housekeeper/cleaner, the VE testified that she last observed this job in her professional capacity on May 10, 2012 and that this was the only time she observed that position within the previous 12 months (AR. 61). The VE also testified that she only observed one housekeeper for less than an hour (AR. 62). Although the VE also testified that she additionally conducted a labor market survey for the housekeeper position, she indicated that her survey did not specifically address the issue of using the non-dominant extremity only occasionally (*see id.*). The VE opined that the housekeeper position could be performed with only the occasional use of the non-dominant extremity (AR. 63), but when asked what experience supported this opinion regarding a specific task that a housekeeper must perform, (pushing a cart), the VE responded "I don't know" (AR. 64). In addition, even though the VE indicated that a housekeeper/cleaner "cleans rooms and halls in commercial establishments []; may sort, count, or carry linens; pushes a cart; makes beds; [and] replenishes supplies, such as

1  glasses," the VE also testified that the housekeeper/cleaner that she observed in her

2  professional capacity actually used both arms when making the beds (AR. 63). As

3  making beds is a regular duty of a housekeeper/cleaner, and as the VE testified that her

4  only professional expertise from observing this job suggested that this task requires two

5  hands, it would appear that the VE's professional expertise demonstrates that both upper

6  extremities would need to be utilized more than occasionally in this position (*see id.*).

7        Similarly, the VE testified that the housekeeper/cleaner that she observed used

8  both hands when replacing the toilet paper (AR. 64-65). Regarding cleaning the

9  bathroom, the VE testified that although the housekeeper/cleaner that she observed

10 "mainly" cleaned the tub shower and toilet with one hand, she was "leaning on the other

11 hand" (AR. 65). Although the housekeeper/cleaner who was observed dusted one-

12 handed, vacuumed one-handed, and replaced supplies one-handed, "carrying was done,

13 mainly, two-handed" (AR. 65-66). Although the job duties of a housekeeper/cleaner also

14 entails putting dirty laundry into the cart and taking it down to the laundry room, the VE

15 testified that she did not observe that particular task (AR. 66). The Court concludes that

16 substantial evidence in the record as a whole does not support the VE's opinion or the

17 ALJ's finding that the housekeeper/cleaner position can be performed by an individual

18 who only has occasional use of the non-dominant extremity, such as plaintiff. The VE's

19 testimony regarding her professional experience with respect to this position

20 demonstrates that it entails more than the occasional use of the non-dominant upper

21 extremity. The Court also concludes that the record does not "contain persuasive

evidence to support the deviation" by the ALJ from the DOT regarding this last identified job. *See Johnson, supra,* 60 F.3d at 1435.

While it is not necessary for the VE to observe personally the performance of every job that is identified as a potential alternative source of employment, it remains the ALJ's burden to support any such conclusion with substantial evidence. The Court concludes that the ALJ did not meet her burden at step five "to show that. . . . [plaintiff could] perform any substantial gainful work in the national economy." *Pinto*, *supra,* 249 F.3d at 844-45 (*citing* 20 C.F.R. §§ 404.1520(e), (f), 416.920(d), (e), (f); *Moore*, *supra,* 216 F.3d at 869; *Clem*, *supra,* 894 F.2d at 330) (internal footnote omitted). The Court also concludes that this error is not harmless because if plaintiff could not have performed the identified jobs, and no other jobs can be identified that one with plaintiff's RFC could have performed, then plaintiff should have been found disabled at step five. *Marsh v. Colvin*, 792 F.3d 1170, 2015 U.S. App. LEXIS 11920 at *7-*8 (9th Cir. July 10, 2015) (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)).

**(2)     Whether or not the ALJ's errors support remand for an immediate award**.

The Court already has concluded that the ALJ erred at step five when considering the VE's testimony, *see supra*, section 1. However, the Court also concludes that testimony from a vocational expert with specific expertise regarding limitations to occasional use with the non-dominant upper extremity would serve a useful purpose. Therefore, the Court concludes that this matter should be reversed for further

administrative proceedings as opposed to reversed with a direction to award benefits. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (citations omitted) (remand with a direction to award benefits is not appropriate if "further administrative proceedings would be useful").

## CONCLUSION

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 29th day of September, 2015.

_____
J. Richard Creatura
United States Magistrate Judge